UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) JAMES DILLON**, on Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) ) | Case No.16-mc-005-CVE-TLW **(Original M.D.N.C. No. 1:13-CV-897)** |
| **(2) BMO HARRIS BANK, N.A.**, **(3) FOUR OAKS BANK & TRUST**, a North Carolina Chartered Bank, **(4) GENERATIONS FEDERAL CREDIT UNION**, and **(5) BAY CITIES BANK**, a Florida State-Chartered Bank, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### NON-PARTY THE OTOE-MISSOURIA TRIBE OF INDIANS' MOTION TO QUASH THE SUBPOENA OF JOHN SHOTTON AND/OR FOR PROTECTIVE ORDER

Non-Party the Otoe-Missouria Tribe of Indians, a federally-recognized Indian tribe located in Red Rock, Oklahoma ("Tribe"), hereby moves pursuant to Federal Rule of Civil Procedure 45(d)(3)(A) and 45(f) to quash a certain *Subpoena to Testify at a Deposition in a Civil Action* (the "Subpoena") issued against John Shotton, the Tribe's elected Chairman and also a non-party to the primary action, in the matter styled *James Dillon v. BMO Harris Bank, N.A., et al.,* No.: 1:13-CV-897 (M.D.N.C. filed Aug. 13, 2015), currently pending before the United States District Court for the Middle District of North Carolina (the "North Carolina Action"). Alternatively, the Tribe moves pursuant to Federal Rule of Civil Procedure 26(c)(1) for a

protective order forbidding the discovery sought pursuant to the Subpoena in light of the Tribe and Chairman Shotton's sovereign immunity from judicial process.[1]

## I. INTRODUCTION

As a federally-recognized Indian tribe possessing all attributes of sovereignty, the Otoe-Missouria Tribe of Indians, its enterprises and elected officials are all protected by tribal sovereign immunity against all aspects of the judicial process, including subpoenas. In blatant disregard of that immunity, BMO Harris Bank, N.A. ("BMO Harris"), a Defendant in the North Carolina Action, nonetheless served Chairman Shotton with the Subpoena, which purported to compel it to testify at a January 25, 2016 deposition.

Pursuant to Rule 45(d), the Tribe now seeks an order quashing the Subpoena. In the alternative, the Tribe seeks a protective order, pursuant to Rule 26(c), on the grounds that the North Carolina Court lacks personal and subject matter jurisdiction over the Tribe, its business enterprises and its officers, including Chairman Shotton, absent an unequivocal waiver of sovereign immunity by the Tribe or an act of Congress—neither of which have occurred.

## II. FACTUAL BACKGROUND

As set forth above, the Tribe is a federally recognized Indian tribe located in Red Rock, Oklahoma that possesses sovereign common law immunity from suit. *See* Declaration of John Shotton ("Shotton Decl."), filed concurrently herewith, at ¶ 2. John Shotton serves as the elected Chairman of the Tribe and has served in this capacity since 2007. *Id.* at ¶ 2. In addition to

---

[1] The Tribe files this Motion for the limited purpose of contesting the North Carolina Court's jurisdiction to enforce the Subpoena. Such limited or special appearance shall not be construed as waiving any arguments that the Tribe has with regard to its sovereign immunity or the North Carolina Court's lack of jurisdiction. Indeed, courts have routinely recognized that a sovereign's limited appearance in legal proceedings for the purpose of seeking dismissal for lack of jurisdiction does not waive any claims to sovereign immunity. *See e.g., Kansas v. United States,* 249 F.3d 1213, 1220 (10th Cir. 2001); *Zych v. Wrecked and Abandoned Vessel*, 960 F.2d 665, 667-68 (7th Cir. 1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians, et al. v. Norton*, 327 F.Supp.2d 995, 1000 (W.D. Wis. 2004); *Wyandotte v. Kansas City,* 200 F.Supp.2d 1279, 1287 (D.Kan. 2002); *Miami Tribe of Okla. v. Walden,* 206 F.R.D. 238 (S.D. Ill. 2001).

serving as the elected Chairman of the Tribe, Mr. Shotton also served as Secretary/Treasurer of Great Plains Lending, LLC ("Great Plains"), a wholly-owned entity and an economic arm of the Tribe, whose stated purpose is to advance the Tribe's economic development and to aid in addressing issues of public health, safety, and welfare and also enjoys the Tribe's sovereign immunity. *Id.* at ¶¶ 2, 7-11.

On October 8, 2013, a federal class action lawsuit was initiated by Plaintiff James Dillon ("Dillon") in the North Carolina Court against a number of financial institutions seeking monetary damages, restitution, and declaratory and injunctive relief. ("North Carolina Action"). *See* Bazzazieh Decl., ¶ 3. Importantly, neither the Tribe, nor its entities or officials are named parties in the North Carolina Action.

On January 12, 2016, legal counsel to BMO Harris sent a letter and accompanying Subpoena to the Tribe's legal counsel. *Id.* at ¶ 4. In the letter, BMO Harris requests that Mr. Shotton attend an evidentiary hearing scheduled on January 27, 2016 in the North Carolina Action, and to the extent that he is unable to attend that hearing, requests that he attend a deposition in relation to the North Carolina Action. *Id.* After the Tribe's legal counsel advised that they were not authorized to accept service of the subpoena, BMO Harris served the subpoena on Chairman Shotton on January 20, 2016, seeking in person testimony on January 25, 2016 in Tulsa, Oklahoma. *Id.* at ¶ 5-7; *See* Subpoena to Testify at a Deposition in a Civil Action, *James Dillon v. BMO Harris Bank, N.A., et al.,* No.: 1:13-CV-897 (M.D.N.C. filed Aug. 13, 2015) ("Subpoena"), a true and correct copy of which is attached to the Shotton Decl. as Exhibit "C" thereto.

It is undisputed (and BMO Harris does not contest) that the Tribe has never waived its sovereign immunity or consented to be involved in this action in any capacity whatsoever.

3

Shotton Decl., ¶ 14. Therefore, the North Carolina Court lacks jurisdiction over the Tribe, Great Plains and any of its employees, officers and agents to enforce the Subpoena. Notwithstanding BMO Harris' recognition of the Tribe's sovereign status, its legal counsel has refused or otherwise declined to voluntarily withdraw the Subpoena *Id.* at ¶ 6.[2]

### III. ARGUMENTS AND AUTHORITIES

#### A. THE MOTION TO QUASH SHOULD BE GRANTED BECAUSE THE TRIBE IS IMMUNE TO ALL ASPECTS OF THE JUDICIAL PROCESS.

The United States Supreme Court has recognized tribal sovereign immunity is a "core aspect" of tribal sovereignty. *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2030 (2014). *Bay Mills* follows a long line of Supreme Court jurisprudence holding that Indian tribes are immune from suit absent explicit tribal consent or Congressional authorization. *See, e.g.*, *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754-756, (1998); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509 (1991) (holding that tribal sovereign immunity barred the State of Oklahoma from suing a tribe to collect a sales tax); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (holding that suit against a tribe to enforce federal statutory rights was barred by tribal sovereign immunity); *Puyallup Tribe v. Washington Dept. of Game*, 433 U.S. 165, 172 (1977) (holding that tribal sovereign immunity barred a State agency from suing a tribe).

Tribal sovereign immunity extends beyond a Tribe's political operations and into its economic operations. As the Court made clear in *Kiow*a, tribal immunity does not hinge on whether the conduct in question is governmental or commercial, nor does it hinge on whether the conduct is on- or off-reservation. *Kiowa*, 523 U.S. at 759. In *Bay Mills* the Court declined to

---

[2] The Tribe asserts the meet and confer requirements are met in that counsel for Tribe telephonically conferred with counsel for BMO Harris, the distance between said counsels' offices rendering a personal conference infeasible. No accord was reached on the matter, resulting in the filing of this Motion. Bazzazieh Decl. ¶ 6.

overrule *Kiowa*; instead the Court reiterated that "it is fundamentally Congress's job, not ours, to determine whether or how to limit tribal immunity." *Bay Mills*, 134 S.Ct. at 2037-38.

Tribal sovereign immunity from "suit" protects tribes and arms of tribes against *all* aspects of the judicial process; it is *not* limited to protecting tribes against being named defendants in formally conducted civil litigation. *See Alltel Communs., LLC v. DeJordy,* 675 F.3d 1100, 1105-1106 (8th Cir. 2012) (holding that a federal court's third-party subpoena issued on a non-party tribe and non-party tribal official was a "suit" that was subject to Indian tribal immunity); *Bishop Paiute Tribe v. County of Inyo,* 275 F.3d 893 (9th Cir. 2002), *vacated and remanded on other grunds sub. nom., Inyo County v. Paiute-Shoshone Indians,* 538 U.S. 701 (2003) (tribal sovereign immunity bars execution of state search warrant for tribal employee records); *United States v. James*, 980 F.2d 1314 (9th Cir. 1992) (tribal sovereign immunity bars issuance of subpoena duces tecum requested by criminal defense attorney seeking records regarding victim's alleegd alcohol and drug problems).

### B. THE TRIBE'S IMMUNITY EXTENDS TO ITS ELECTED OFFICIALS, INCLUDING CHAIRMAN JOHN SHOTTON

The Tenth Circuit has long held that tribal sovereign immunity extends to tribal officials acting in their official capacity and within the scope of their authority. *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997). *See also Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1246 (N.D. Okla. 2012). The Tenth Circuit is not alone in recognizing this important facet of tribal immunity. Indeed, every other court to consider the issue has likewise concluded that tribal officers share in the immunity of the tribe itself so long as they are acting in their official capacity and within their authority under tribal law. *See, e.g., Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004); *Linneen v. Gila River Indian Community*, 276 F.3d 489, 492 (9th Cir. 2002); *Bassett v. Mashantucket Pequot Museum & Research Ctr., Inc*., 221 F. Supp. 2d 271, 278 (D.

5

Conn. 2002); *Catskill Development, LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (N.D.N.Y. 2002); *Romanella v. Hayward*, 933 F. Supp. 163 (D. Conn. 1996). Whether a tribal official has acted within the scope of his authority is a question of tribal law. *Cash Advance & Preferred Cash Loans v. State*, 242 P.3d 1099, 1112 (Colo. 2010) (holding that the scope of a tribal officer's lawful authority "is defined by the sovereign tribe"); *see also Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 310 (N.D.N.Y. 2003).

The reasoning behind tribal officer immunity is that tribes—like other governments—necessarily act through their officials. So when aspects of the judicial process—e.g., discovery—are directed at the tribal officer, by extension, the tribe itself is compelled to act. This, of course, would utterly derogate the policies underlying tribal sovereign immunity. *See Fletcher*, 116 F.3d at 1324 (noting that the consequences of allowing judicial process against tribal officers "would run against the Tribe itself"); *Bynon v. Mansfield*, 2015 WL 2447159, at *2 (E.D. Pa. May 21, 2015) (finding that the tribe is the "real party in interest").

In this case, Chairman Shotton is clearly a tribal official—he is the elected Chairman of the Tribe as well as the Secretary and Treasurer of Great Plains. And at all relevant times he has acted in his representative capacity and within the scope of his authority under tribal law. Hence, he is protected by tribal sovereign immunity.[3]

## IV. CONCLUSION

As set forth above, the Tribe, Great Plains and Chairman Shotton enjoy sovereign immunity from judicial processes, including the exercise of subpoena jurisdiction at issue here in

---

[3] On August 13, 2015, the plaintiff in this case, James Dillon, served on Great Plains a similar Subpoena Duces Tecum issued in the United States District Court for the Western District of Oklahoma, Case No. CIV-15-1012-D [Dkt. #1]. Great Plains filed a Motion to Quash Deposition Subpoena *Duces Tecum* and/or for Protective Order. *Id.* Subsequently, plaintiff filed a Notice of Withdrawal of Subpoena to Great Plains Lending LLC, in which it acknowledged Great Plains' assertion of tribal sovereign immunity. *Id.* [Dkt. #5-1]. As a result, Great Plains filed a motion to withdraw the motion to quash, which the court granted. *Id.* [Dkt. ##5, 6].

respect to the North Carolina Action.  There has been no waiver of sovereign immunity by the Tribe.  Accordingly, the Court from which the subpoena was issued lacks both personal and subject matter jurisdiction over the matter.  The Subpoena should be quashed and a protective order entered accordingly.

WHEREFORE, the Tribe pray this Court grant its Motion and either quash the Subpoena entirely or issue a protective order preventing BMO Harris and/or the North Carolina Court from attempting to compel the Tribe, Great Plains or any of its officials to comply with the Subpoena in any matter whatsoever, that it award the Tribe any and all attorneys' fees and costs expended in furtherance hereof, and that it grant them such other and further relief deemed to be just and proper.

Respectfully submitted,

By: *s/ Stuart D. Campbell*
Stuart D. Campbell, OBA #11246
L. Dru McQueen, OBA #10100
**DOERNER, SAUNDERS, DANIEL
    & ANDERSON, L.L.P.**
Two West Second Street, Ste. 700
Tulsa, Oklahoma 74103
Tel. (918) 582-1211 | Fax (918) 925-5250
E-mail: scampbell@dsda.com
    dmcqueen@dsda.com

Saba Bazzazieh (*pro hac vice pending*)
ROSETTE, LLP
1100 H Street, NW
Washington, DC 20005
Tel. (202) 652-0579
Fax. (202) 525-5261
E-mail:  sbazzazieh@rosettelaw.com

**Attorneys for the Non-Party/Movant,
OTOE-MISSOURIA TRIBE OF INDIANS**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 22, 2016 he caused a true and correct copy of the foregoing instrument to be deposited into U.S. Mails addressed to:

**Counsel for the Plaintiff Class:**
Darren T. Kaplan, Esq.
DARREN KAPLAN LAW FIRM, P.C.
1359 Broadway, Ste. 2001
New York, NY 10018

Norman E. Siegel, Esq.
Steve Six, Esq.
J. Austin Moore, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112

F. Hill Allen, Esq.
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602-1151

Hassan A. Zavareei, Esq.
Jeffrey D. Kaliel, Esq.
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Ste. 808
Washington, D.C. 20036

Jeffrey M. Ostrow, Esq.
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301

**Counsel for Defendants:**
Mary K. Mandeville, Esq.
ALEXANDER RICKS PLLC
2901 Coltsgate Road, Suite 202
Charlotte, NC 28211

Lucia Nale, Esq.
Debra Bobo-Ernst

MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

Kevin Ranlett, Esq.
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006

Reid C. Adams, Jr., Esq.
Garth A. Gersten, Esq.
Jonathan R. Reich, Esq.
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101

Eric A. Pullen, Esq.
Leslie Sara Hyman, Esq.
Etan Tepperman, Esq.
PULMAN, CAPPUCCIO, PULLEN, BENSON & JONES LLP
2161 NW Military Hwy, Ste. 400
San Antonio, TX 78213

Mark Vasco, Esq.
BRYAN CAVE LLP
One Wells Fargo Center
301 S. College Street, Ste. 3400
Charlotte, NC 28202

Michael P. Carey, Esq.
BRYAN CAVE LLP
1201 West Peachtree Street
N.W. Suite 1400A
Atlanta, GA 30309

Eric Reider, Esq.
1290 Avenue of the Americas
New York, NY 10104-3300

Clifton L. Brinson, Esq.
Carl N. Patterson, Jr., Esq.
Isaac A. Linnartz, Esq.
SMITH, ERSON, BLOUNT, DORSETT, TCHELL & JERNIGAN, LLP
150 Fayetteville Street, Ste. 2300
Raleigh, NC 27601

*s/Stuart D. Campbell*

3683877v1