UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JAMES DILLON**, on Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>**BMO HARRIS BANK, N.A., FOUR OAKS BANK & TRUST**, a North Carolina Chartered Bank, **GENERATIONS FEDERAL CREDIT UNION**, and **BAY CITIES BANK**, a Florida State-Chartered Bank,<br><br>        Defendants. | Case No. 16-mc-005-CVE-TLW<br>**(Original M.D.N.C. No. 1:13-CV-897)** |

### NON-PARTY THE OTOE-MISSOURIA TRIBE OF INDIANS' REPLY IN SUPPORT OF MOTION TO QUASH THE SUBPOENA OF JOHN SHOTTON AND/OR FOR PROTECTIVE ORDER

The cases upon which the Defendant, BMO Harris Bank, N.A. (BMO) rely in its Opposition are inapposite and distinguishable from the case at hand, thereby warranting the Court to grant the Tribe's Motion. Critically, in this case the Otoe-Missouria Tribe contends no wavier of sovereign immunity occurred.

*Knox v. U.S. Dep't of Interior*, 2012 WL 465585 (D. Id. Feb. 13, 2012)

There are several significant points of distinction. First, the tribes in that case (the Shoshone–Bannock) took a much more active role in the litigation. Even though the Tribes were not technically parties to the litigation, as the decision notes, "the Tribes asked, and were granted, the right to file an amicus brief accompanied by Declarations of Small and Osborne that discussed the Tribes' gaming operations."

In granting the motion to compel, the court did not look to the Declarations in a vacuum; the court examined the totality of the circumstances. Because the Tribes were actively litigating the case (albeit as amici), they were estopped from asserting immunity

as to items covered in the Declarations. This makes sense, because the Tribes were in fact using those Declarations for their own benefit in their amicus brief.

In contrast, in this case, neither the Otoe–Missouria Tribe nor Chairman Shotton are parties to the litigation in any capacity – as amici or otherwise. Hence, unlike the Tribes acting as an amicus in Knox, the Otoe–Missouria would not have any unfair advantage in litigation, as the Otoe–Missouria are not participating in the litigation.

Second, even though the court did find that immunity was waived by the Tribe in Knox, the "waiver" was obviously authorized by the Tribe, as it was the Tribe that submitted the accompanying amicus brief. This authorization by the Tribe is critical, as federal courts have repeatedly held that "for a waiver to be effective, the waiver must be in compliance with tribal law." Winnebago Tribe of Nebraska v. Kline, 297 F. Supp. 2d 1291 (D. Kan. 2004); see also Memphis Biofuels, LLC v. Chickasaw Nation Industries, 585 F.3d 917 (6th Cir. 2009), Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282 (11th Cir. 2001).

It is well established that a document containing language that purports to waive a tribe's immunity cannot affect a waiver of that immunity when the person executing the document was not authorized to waiver the tribe's immunity under tribal law. *See Hydrothermal Energy Corp.,* 170 Cal.App.3d at 494; *Snow v. Quinault Indian Nation,* 709 F.2d 1319 (9th Cir. 1983): *World Touch Gaming, Inc. v. Massena Mgmt. LLC,* 117 F.Supp.2d 271 (N.D.N.Y 2000); *Danka Funding Co., LLC v, Sky City Casino*, 747 A.2d 837 (N.J. Super. Law Div. 1999). The *Hydrothermal* court cited the U.S. Supreme Court's decision in *U.S. Fidelity & Guaranty Co.*, where the Court stated that:

> It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that this immunity cannot be waived by officials. If the contrary were true, it would subject the Government to suit in any court in the discretion of its responsible officers. That is not permissible.

*Id.* At 494 (quoting *U.S. Fidelity & Guaranty C., 309* U.S. at 513) (emphasis added). Thus the court in *Hydrothermal* held that the tribal chairperson "could not waive the Tribe's immunity, unless the Tribe had expressly delegated that duty to her. Nothing in the Tribe's Constitution and Bylaws gave her such authority." *Id.*

For the Otoe–Missouria Tribe, this would mean that the waiver would have to be approved by the Tribal Council through a formal resolution. See Constitution of the Otoe–Missouria Tribe of Indians, Art. VIII, § 1 ("The Tribal Council shall have final authority to transact business and otherwise speak or act on behalf of the Tribe in all matters . . . ."). Of course, that did not happen here. Thus, even assuming arguendo that declaration can even be interpreted as containing a waiver of sovereign immunity, the waiver was clearly ineffective as it was not accompanied by a Tribal Council resolution.

Third, Knox is an unpublished decision from the District Court of Idaho. It has no binding authority in this matter, and the lack of analysis in the decision only underscores why this Court should decline to give any weight to the decision.

*United States v. James*, 980 F.2d 1314 (9th Cir. 1992)

In relevant part, *James* held that the Quinault Indian Nation could not "selectively provide documents and then hide behind a claim of sovereign immunity when the defense requests different documents from the same agency." 980 F.2d at 1320. The case is inapposite for at least two reasons:

First, the holding in *James* was exceedingly narrow. The analysis pertains only to the substantive scope of a waiver of immunity, i.e., what types of documents were discoverable after the initial voluntary disclosure.

The Tribe (through its housing authority) had initially disclosed documents pertaining to disturbances resulting from the rape victim's occupancy of a tribal housing unity. This initial disclosure waived the Housing Authority's immunity against compelled disclosure of other relevant documents in its possession, but it did not waive the immunity of other tribal agencies regarding any and all information relevant to the

3

victim (such as substance abuse issues). As to this latter category of documents, immunity remained intact.

Indeed, the analysis in James was about what type of documents were discoverable after a voluntary disclosure of certain other documents. The case was not about whether a tribal official's previous willingness to provide information through a declaration can be used to compel that official to attend a deposition.

Second, like *Knox*, the "waiver" was apparently fully authorized by the Tribe, as the documents were delivered from the tribal agency. Or at the very least, there is no indication that the limited initial disclosure was unauthorized. Again, in this case, there was no waiver through Tribal Council resolution.

Third, like *Knox*, the analysis in *James* was guided by concerns of unfair advantages in litigation. *James* involved a criminal proceeding where the United States (as prosecutor) had obtained various documents from the Tribe's Housing Authority relevant to the indictment. As the court noted, the Tribe "voluntarily provid[ed] the Government with documents relevant to the case," and thereafter attempted to "hide behind a claim of sovereign immunity when the defense requests different documents from the same agency." Id. at 1320 (emphasis added).

Thus, if the Ninth Circuit did not find a limited waiver with respect to documents in possession of the Housing Authority, the Government would have had an unfair advantage in a criminal prosecution—raising grave due process concerns.

In contrast, in this case, again, there should be no concern regarding unfair advantages in litigation. The Chairman's refusal to provide deposition testimony does not necessarily favor one party over the other. Indeed, unlike in James, there is no risk that the already-provided information in the Declaration could be misleading in favor of either party. Nor do the due process concerns inherent in a criminal proceeding attach to this civil case.

*United States v. Velarde*, 40 F. Supp. 2d 1314 (D.N.M. 1999)

4

*Velarde* is not pertinent at all and should not be considered as such by this Court. The court in *Velarde* denied the Tribe's motion to quash primarily on the basis that the Major Crimes Act (a federal statute) implicitly abrogated tribal sovereign immunity.

The court reasoned that "[b]y requiring federal prosecution of an individual tribal member under certain circumstances, the Major Crimes Act necessarily intrudes on the 'otherwise exclusive jurisdiction of the tribes to punish Indians for crimes committed on Indian land.' This extension of federal jurisdiction 'inherently includes every aspect of criminal procedure application to prosecution of such crimes.'" 40 F. Supp. 2d at 1315–16.

Moreover, like *Knox* and *James*, the court balanced the interests of the parties in litigation. The court found that if the Tribe was able to withhold information in a Major Crimes Act case, it would impede the enforcement of the MCA while also potentially compromising the criminal defendant's due process rights.

The analysis in *Velarde* was based almost entirely on the Major Crimes Act. Of course, unlike *Velarde*, this is not a Major Crimes Act case. Obviously, in this case there has been no congressional abrogation of tribal sovereign immunity.

**CONCLUSION**

In sum, none of the three cases relied upon by Defendant BMO Harris are pertinent here. In *Knox*, the overriding concern was that a tribe was using a declaration for its own benefit as an amicus party while simultaneously withholding similar relevant information from the plaintiff. In *James,* the analysis was primarily regarding the substantive scope of a waiver of immunity, not whether a tribal official's previous willingness to provide information could subsequently result in that tribal official being compelled to give an in-person deposition. And in *Velarde*, there was a federal statute—

the Major Crimes Act—that was interpreted as abrogating tribal sovereign immunity against subpoenas.

None of the reasoning in these three cases applies to this litigation. Moreover, in this case, unlike the cases cited by Defendant, the alleged "waiver" of immunity was not even authorized by the Tribal Council. Because waivers of immunity must comply with tribal law in order to be effective, this fact alone is dispositive. *See Winnebago Tribe of Nebraska v. Kline*, 297 F. Supp. 2d 1291 (D. Kan. 2004). Furthermore, the Supreme Court has made it clear that waivers of immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). For all of these reasons, the Court should grant the Motion to Quash.

Respectfully submitted,

s/ Stuart Campbell
Stuart Campbell, OBA #11246
Dru McQueen, OBA #10100
**DOERNER, SAUNDERS, DANIEL
    & ANDERSON, L.L.P.**
Two West Second Street, Ste. 700
Tulsa, Oklahoma 74103
Tel. (918) 582-1211 | Fax (918) 925-5250
E-mail:


Saba Bazzazieh (*pro hac vice pending*)
ROSETTE, LLP
1100 H Street, NW
Washington, DC 20005
Tel. (202) 652-0579
Fax. (202) 525-5261
E-mail: sbazzazieh@rosettelaw.com

**Attorneys for the Non-Party/Movant,
OTOE-MISSOURIA TRIBE OF INDIANS**

6

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 26, 2016 he caused a true and correct copy of the foregoing instrument to be deposited into U.S. Mails addressed to:

**Counsel for the Plaintiff Class:**
Darren T. Kaplan, Esq.
DARREN KAPLAN LAW FIRM, P.C.
1359 Broadway, Ste. 2001
New York, NY 10018

Norman E. Siegel, Esq.
Steve Six, Esq.
J. Austin Moore, Esq.
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112

F. Hill Allen, Esq.
THARRINGTON SMITH, L.L.P.
P.O. Box 1151
Raleigh, NC 27602-1151

Hassan A. Zavareei, Esq.
Jeffrey D. Kaliel, Esq.
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Ste. 808
Washington, D.C. 20036

Jeffrey M. Ostrow, Esq.
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301

**Counsel for Defendants:**
Mary K. Mandeville, Esq.
ALEXANDER RICKS PLLC
2901 Coltsgate Road, Suite 202
Charlotte, NC 28211

Lucia Nale, Esq.

Debra Bobo-Ernst
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

Kevin Ranlett, Esq.
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006

Reid C. Adams, Jr., Esq.
Garth A. Gersten, Esq.
Jonathan R. Reich, Esq.
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27101

Eric A. Pullen, Esq.
Leslie Sara Hyman, Esq.
Etan Tepperman, Esq.
PULMAN, CAPPUCCIO, PULLEN, BENSON & JONES LLP
2161 NW Military Hwy, Ste. 400
San Antonio, TX 78213

Mark Vasco, Esq.
BRYAN CAVE LLP
One Wells Fargo Center
301 S. College Street, Ste. 3400
Charlotte, NC 28202

Michael P. Carey, Esq.
BRYAN CAVE LLP
1201 West Peachtree Street
N.W. Suite 1400A
Atlanta, GA 30309

Eric Reider, Esq.
1290 Avenue of the Americas
New York, NY 10104-3300

Clifton L. Brinson, Esq.
Carl N. Patterson, Jr., Esq.
Isaac A. Linnartz, Esq.

SMITH, ERSON, BLOUNT, DORSETT, TCHELL & JERNIGAN, LLP
150 Fayetteville Street, Ste. 2300
Raleigh, NC 27601

<u>s/ Stuart Campbell</u>

3683877v1